# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5984 | **DATE** | 10/21/2002 |
| **CASE TITLE** | Marcus Gregory vs. Jon Oliver, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 10/25/02 at 8:45 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion for summary judgment as to the false arrest claim is granted in part and denied in part, and as to the excessive force claim is denied in its entirety and as to both abuse of process claims is granted. (36-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | OCT 2 2 2002 | |
| | Notified counsel by telephone. | | date docketed | 54 |
| | Docketing to mail notices. | | *eav* | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 10/21/2002 | |
| | | | date mailed notice | |
| SN | courtroom deputy's initials | | SN | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DOCKETED
OCT 2 2 2002

MARCUS GREGORY,           )
                          )
        Plaintiff,        )
                          )
    v.                    )    No.  00 C 5984
                          )
JON OLIVER, et al.,       )
                          )
        Defendants.       )

<u>MEMORANDUM OPINION AND ORDER</u>

Marcus Gregory ("Gregory") has filed a 42 U.S.C. §1983
("Section 1983") action against the City of Waukegan ("City") and
three officers in the narcotics division of its Police Department
("Department"):  Jon Oliver ("Oliver"), Scott Chastain
("Chastain") and Gabriel Guzman ("Guzman").  Gregory charges that
he was deprived of his constitutional rights under the Fourth
Amendment[1] in having been (1) falsely arrested and also subjected
to (2) excessive force, (3) abuse of process in withholding
exculpatory information and (4) abuse of process in pressuring
him to be an informant.

All defendants have collectively filed a Fed. R. Civ. P.
("Rule") 56 summary judgment motion, and they and Gregory have

---

[1] As always, this opinion adheres to the conventional and
convenient (though technically imprecise) practice of referring
to the underlying Bill of Rights provision (which of course
imposes limitations only on the federal government) rather than
to the Fourteenth Amendment (which applies to state actors and
has been construed to embody such Bill of Rights guaranties).

54

complied with this District Court's related LR 56.1.[2]  For the
reasons set forth in this memorandum opinion and order,
defendants' motion for summary judgment:

> 1.  as to the false arrest claim is granted in part and
> denied in part,

> 2.  as to the excessive force claim is denied in its
> entirety and

> 3.  and 4.  as to both abuse of process claims is
> granted.

### Summary Judgment Standards

Familiar Rule 56 principles impose on parties moving for
summary judgment the burden of establishing the lack of a genuine
issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317,
322-23 (1986)).  For that purpose this Court must "consider the
evidentiary record in the light most favorable to the non-moving
party...and draw all reasonable inferences in his favor" (Lesch
v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)).
And Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001) has

---

[2]  LR 56.1 is designed to facilitate the resolution of
Rule 56 motions by calling for evidentiary statements and
responses (in each instance with record citations), thus
highlighting the existence or nonexistence of factual disputes.
This opinion cites to defendants' LR 56.1(a)(3) statement as "D.
St. ¶--," while Gregory's responses are cited as "G. Resp. St.
¶--" and his LR 56.1(b)(3)(B) statement of additional facts is
cited as "G. Add. St. ¶--."  This opinion employs the same "D."
and "G." abbreviations in referring to the parties' exhibits
("Ex."), memoranda ("Mem."), answering memoranda ("Ans. Mem.")
and reply memoranda ("R. Mem.").

echoed the teaching of <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 248 (1986):

> A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

As with any summary judgment motion, this Court accepts nonmovant Gregory's version of any disputed facts, but only so long as it is supported by record evidence.[3] What follows in the <u>Facts</u> section is culled from the parties' submissions.

## Facts

City maintains an informal policy that allows its police officers to recruit informants to assist its narcotics division by providing "street intelligence" or "performing controlled drug buys" (G. Add. St. ¶4). As an informant, the arrestee can "work off charges" in exchange for confidential informant work (<u>id</u>. ¶9). Although there are no written guidelines for that practice, recruiting informants in exchange for "working off charges" is common in the Department (<u>id</u>. ¶10). At times police officers choose not to process an arrest until after they have tried to get helpful information from the arrestee (<u>id</u>. ¶11). Even when charges are processed, police will allow some arrestees to work off minor charges in exchange for assistance (<u>id</u>.). In the case

---

[3] Because nonmovant Gregory's version must be taken as true at this point, this opinion eschews hedging phrases such as "Gregory contends" or "Gregory asserts" when setting out the background. Relatedly, the recital will not always identify the frequent disparities in the parties' versions of the facts.

of severe felony charges, where the State's Attorney alone can drop or downgrade charges, a police recommendation will invariably result in reduced charges if the arrestee cooperates with the police (id.).

Members of the Department stopped Gregory numerous times during mid-1998 and solicited him (without success) to become an informant (G. Add. St. ¶14). When Gregory again refused to become an informant on August 25, 1998, Chastain and Officer Thomas Granger ("Granger") issued four tickets charging him with traffic violations (id. ¶16). Three days later, when Chastain, Granger and Guzman stopped Gregory for another traffic violation, Guzman noted cocaine in plain view in the car (id. ¶¶17-18). One of the officers told Gregory he was under arrest for possession of cocaine (id. ¶18). But before the arrest was processed, Guzman offered not to do so if Gregory would agree to serve as a drug informant (id. ¶19). Once more Gregory refused the offer (id.). Although Gregory claims that the officers singled him out for recruitment (id. ¶14), he also acknowledges that defendants' actions were not limited to him, but were part of an effort to catch "bigger fish" such as drug dealers (id. ¶12).

Gregory was charged with possession of cocaine for the August 28, 1998 incident (G. Add. St. ¶20). During the bench trial the prosecutor stated that Guzman and Chastain had found a rock of crack cocaine in the car's back seat (G. Ex. 10 at 3-5)

and that a woman of an unknown identity was present in the front seat (id. at 3-4). That information is contradicted by testimony given by Granger, who said that the cocaine was on the front seat and located near the female passenger (G. Add. St. ¶18). Additionally, Granger's knowledge differed from those of other officers in that he knew the name of the female passenger, Beverly Dixon (id.). Gregory was acquitted by the trial judge, who found there was insufficient evidence to show that he knowingly possessed the drugs (D. St. ¶11).

On November 5, 1998 Gregory visited his cousin Stan McNulty at 580 S. Genessee Street (D. St. ¶13). After consuming a little alcohol there, Gregory left the premises to use a pay telephone (G. Add. St. ¶21). While he was gone, Guzman, Oliver, Chastain, Granger and other City police officers executed a valid search warrant that authorized them to search the residence and a woman named Leola at the residence (D. St. ¶12; G. Ex. 2 at 58). When Gregory returned to the house, he saw that a door had been broken by a battering ram (G. Exs. 1 at 39 and 4 at 39-40). Gregory was approached by Guzman (G. Ex. 4 at 45-46), who--although he knew nothing about Gregory (id. at 37)--insisted that Gregory enter the house (G. Ex. 1 at 39-40). Although Gregory wanted to leave and said he would return to visit his cousin Stan later (G. Add. St. ¶24), instead he entered the house at Guzman's continued insistence (id. ¶25).

Once Gregory was inside the house, Guzman searched him and found a crack pipe (G. Add. St. ¶25). Although Guzman claimed Gregory had consented to being searched (G. Ex. 4 at 40), Gregory says he did not consent to be searched and acceded only after intimidation by Guzman (G. Add. St. ¶25). After the crack pipe was found, Gregory was arrested and handcuffed for possession of drug paraphernalia. In the midst of the arrest, Gregory fell with Guzman onto a couch in the living room of the house (G. Ex. 1 at 49). Once there, Gregory was beaten by a stick and punched repeatedly by Guzman and Chastain (id. at 48-49), though no visible injuries resulted from the beatings (id. at 49).

Gregory was handcuffed and raised to a standing position by Oliver (id. at 50). According to defendants, Gregory then attempted to kick Guzman (D. St. ¶19), and Oliver responded by pulling Gregory down by the handcuffs (G. Ex. 2 at 81). In Gregory's contrasting version (which is credited here), he was being asked to sit down when Oliver violently kicked his feet out from under him (G. Add. St. ¶28). Gregory's foot was caught beneath the couch, breaking his ankle (id.).

That entire episode resulted in police charges being instituted against Gregory for resisting arrest and possession of drug equipment, both misdemeanors (G. Ex. 7). Ultimately Gregory pleaded guilty to charges of aggravated assault (a felony) and resisting arrest (D. St. ¶21).

6

## Qualified Immunity

Because all three officer defendants claim protection against all of Gregory's claims under the mantle of qualified immunity, a brief rehearsal of the principles of that doctrine is in order before the claims are examined individually. Although the review of the doctrine at the current summary judgment stage of the proceedings cannot serve the goal of <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)--to insulate defendants against suit as well as liability even before discovery has taken place--this procedure may still satisfy the directive of <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001) for a ruling sufficiently "early in the proceedings so that the cost and expenses of trial are avoided where the defense is dispositive."

To that end the contours of Fourth Amendment protection against the use of excessive force are of course well developed. And whether such force violates a "clearly established" right is a function of "whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted" (<u>Saucier</u>, 533 U.S. at 202). That test is met, for example, if "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand" (<u>id</u>.). Even beyond that, however, "officials can still be on notice that their conduct violates established law even in novel factual

circumstances" (<u>Hope v. Pelzer</u>, 122 S.Ct. 2508, 2516 (2002)).

That then provides the matrix for one phase of the examination of each of Gregory's claims. This opinion turns to a seriatim consideration of the individual claims.

<u>Count One: False Arrest</u>

Although Amended Complaint ("Complaint") Count One is labeled "False Arrest" (suggesting a state-law-based claim), it properly draws on the Fourth Amendment by describing the onset of the November 5, 1998 incident: Gregory's inability to leave when confronted by Guzman, followed by Gregory's commanded entry into the house.[4] But before that situation is addressed, any claim based on the August 28, 1998 arrest is readily dispatched by reason of the two-year statute of limitations applicable to Illinois-based Section 1983 claims (<u>Mitchell v. Donchin</u>, 286 F.3d 447, 450 n.1 (7th Cir. 2002)), for any such claim "accrue[s] immediately upon his arrest" (<u>Snodderly v. R.U.F.F. Drug Enforcement Task Force</u>, 239 F.3d 892, 897 (7th Cir. 2001)).

---

[4] D. Mem. 2-3 claims it is improper for Gregory to change labels from "false arrest" to "unreasonable seizure." That is nonsense--not only is it unnecessary for federal plaintiffs to specify legal theories (<u>Bartholet v. Reishauer A.G.</u>, 953 F.2d 1073, 1078 (7th Cir.1992)), but even an identification of the wrong legal theory does not impair a complaint's viability (<u>id</u>.). All that is needed is fair notice of the footing on which plaintiff's claim rests (<u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 168 (1993) and <u>Swierkiewicz v. Sorema N.A.</u>, 122 S.Ct. 992, 998-99 (2002)). In this instance Complaint ¶11 surely gave sufficient notice of a potential claim for unreasonable seizure.

8

To return to the events of November 5, 1998, it is plain that Gregory reasonably "believed that he was not free to leave" (United States v. Mendenhall, 446 U.S. 544, 554 (1980)). And it is equally plain that, given the circumstances of a substantial police presence with unholstered guns, and in the course of a search warrant raid that had involved the breaking down of the entry door by a battering ram, the proverbial "reasonable person" (id.) would have had that same belief in response to Guzman's directive to enter the house.

That meets not only the Fourth Amendment's "seizure" standard but also the required test of its unreasonableness. To be sure, the officers had a warrant based on probable cause to search the house at which Gregory arrived while the warrant was being executed (D. St. ¶26). But such a warrant does not automatically extend to all persons who may come on the scene subject to the warrant. Ybarra v. Illinois, 444 U.S. 85, 91 (1979) instructs that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." Instead every individual is "clothed with individual protection against an unreasonable search or an unreasonable seizure" (id.), so that a warrant to search a place cannot normally be construed to authorize a search of each individual person there (id. at 92 n. 4). In short, any seizure of a person at a property subject

to a search warrant must be justified either by probable cause or by some other valid reason, not by blanket reliance on the warrant as defendants claim.

Here defendants have provided no evidence of any probable cause for their November 5 seizure of Gregory. Their assertion that Gregory consented to a search (G. Ex. 4 at 40) is trumped for Rule 56 purposes by Gregory's statements that he did not consent, but acceded only after intimidation by Guzman (G. Add. St. ¶25). Nor have defendants pointed to any facts suggesting probable cause to believe Gregory was involved in drug activity or other illegal action that would justify Guzman's search.[5] Gregory was not the owner or even an occupant of the property subject to the search warrant, but merely a social visitor who arrived after the warrant was executed (D. St. ¶¶12-14). Indeed, Guzman acknowledged that he did not know anything about Gregory when he insisted that Gregory enter the house (G. Ex. 4 at 37). Consequently there was simply no warrant (in either sense of that

---

[5] Defendants incorrectly contend that <u>Michigan v. Summers</u>, 452 U.S. 692 (1981) controls this case. There the seizure was justified only because police knew that Summers occupied the house, thus giving the officer "an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant" (<u>id</u>. at 703-04). And the other cases called upon by defendants (<u>United States v. Pace</u>, 898 F.2d 1218 (7th Cir. 1990) and <u>United States v. Reid</u>, 997 F.2d 1576 (D.C. Cir. 1993)) also involved individuals who (unlike Gregory) had an already-observed specific connection to the property being searched, supporting a finding of probable cause of illegal activity connected to those specific individuals.

word) for Gregory's seizure.[6]

Nor is any problem posed here by the second prong of the Saucier test: whether the constitutional right was clearly established (Saucier, 533 U.S. at 201). All of the just-discussed rules rest on well-settled Supreme Court precedent that every officer must be expected to know. In sum, the motion for summary judgment on the unreasonable seizure claim is denied as to Guzman.

But as to City, the long-established Monell requirements require not only that Gregory prove[7] the deprivation of a federal right (as he has) but also that it flowed from an express municipal policy or custom or the deliberate act of a decisionmaker with final policy-making authority for City (see, e.g., Ienco v. City of Chicago, 286 F.3d 994, 998 (7th Cir.

---

[6] As to any possible contention that a search and accompanying seizure of Gregory might have been supported by a perceived fear for the safety of the officer or others (see, e.g., United States v. Rivers, 121 F.3d 1043, 1045 (7th Cir. 1997)), Guzman is hoist by his own petard: According to his testimony (G. Ex. 4 at 40), he gave Gregory the option of simply leaving the scene--scarcely the conduct of an officer who feared danger from Gregory or harbored a belief that Gregory was involved in criminal activity.

[7] For present purposes Gregory's burden is only that of creating reasonable inferences, not one of proof as such. But any continued repetition of that burden involves an awkward locution, given the fact that so much of the caselaw speaks of what a plaintiff must "prove" or "show." Although this opinion also employs such terms to mirror that caselaw, this Court has consistently applied Gregory's lesser burden of creating reasonable inferences, not the greater burden of persuasion.

2002)).  Nothing suggests any of that as to Guzman's actions, nor
has Gregory shown that either Oliver or Chastain was at all
involved in the unlawful seizure.   Hence the claim of
unreasonable seizure is dismissed on the merits as to City,
Oliver and Chastain.

Count Two:  Use of Excessive Force

Just as with the Count One claim, Gregory's excessive force
claim is measured against the Fourth Amendment's unreasonable
seizures yardstick (<u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989)).
And <u>Saucier</u>, 533 U.S. at 201-02 has reconfirmed the <u>Graham</u>
principle that the standard is one of objective reasonableness.
In turn, qualified immunity is again a function of whether a
constitutional right has been violated and whether the law
regarding that constitutional right is clearly established (<u>id</u>.
at 201).

As for "objective reasonableness," any officers' actions are
assessed "in light of the facts and circumstances confronting
them, without regard to their underlying intent or motivation"
(<u>Graham</u>, 490 U.S. at 397).  Determining whether the force used is
reasonable (<u>id</u>. at 396):

> requires careful attention to the facts and circumstances of
> each particular case, including the severity of the crime at
> issue, whether the suspect poses an immediate threat to the
> safety of the officers or others, and whether he is actively
> resisting arrest or attempting to evade arrest by flight.

In that respect, "[n]ot every push or shove, even if it may later

12

seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment" (id. (internal quotation marks and citation omitted)). When police officers encounter a rapidly evolving situation, they are entitled to graduate their response to meet the demands of the circumstances confronting them (id. at 396-97).

Saucier, 533 U.S. at 202 frames the dispositive inquiry as "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." To adapt that formulation to the present case, the question is whether it was clearly established on November 5, 1998 that performing a leg sweep on a handcuffed individual or beating an individual resisting arrest was constitutionally impermissible behavior in Fourth Amendment terms. And that inquiry must be answered with an unqualified "yes."

It is first important to note that even though Gregory later entered a guilty plea to charges of aggravated assault and resisting arrest (G. St. ¶21), the officers' charges at the time of the incident were merely the misdemeanors of resisting arrest and possession of drug equipment (G. Ex. 7). In light of that minor offense characterization (which defendants can hardly label as objectively unreasonable), the first Graham factor of "the severity of the crime at issue" cuts against the reasonableness of the force portrayed by Gregory.

Next Graham calls for examination of whether Gregory posed
an immediate threat to the safety of officers or others. As to
Gregory's charge that he was the victim of a leg sweep, whether
he was already handcuffed (G. Add. St. ¶28) or was instead
actively resisting arrest when the fall occurred (D. St. ¶¶19-20)
is a question of material fact that is very much in dispute.
Even when it is assumed that Gregory's attempted kick, identified
in the aggravated assault conviction (G. St. ¶21), had placed
Guzman "in reasonable apprehension of receiving a battery,"[8] it
is unclear when the kick at Guzman occurred. For Rule 56
purposes this Court must credit Gregory's version that the leg
sweep happened only during a request for him to sit down (G. Add.
St. ¶28), rather than defendants' position that the injury
occurred simultaneously with Gregory's kick toward Guzman (G. Ex.
2 at 78). That then eliminates (for now) any Gregory-damaging
resolution of the "immediate threat" factor.

As for the last Graham-identified question (whether Gregory
was actively resisting arrest when he was subjected to the
alleged excessive force), that is not answered by his guilty plea
to the resisting-arrest charge (D. St. ¶21). Remember that

---

[8] Here is 720 ILCS 5/12-1(a):

> A person commits an assault when, without
> lawful authority, he engages in conduct which
> places another in reasonable apprehension of
> receiving a battery.

14

according to Gregory he was subjected to the excessive force (the leg sweep) <u>after</u> he had been handcuffed (G. Add. St. ¶28), which had taken place while he was resisting arrest by struggling on the couch with Guzman (G. Ex. 4 at 26). Hence Gregory's currently-accepted version is that he had been subdued and was not actively resisting arrest when the leg sweep occurred.

In total, then, the alleged excessive force related to the leg sweep plainly survives summary judgment scrutiny on the first phase of the <u>Saucier</u> formulation. As the ensuing discussion shows, the other physical harms that Gregory sustained (the beatings to which he was subjected during the handcuffing process) might pose a closer question--although the ultimate answer proves to be the same.

In that respect Gregory acknowledges (1) that the beatings occurred while the officers were trying to handcuff him and place him under arrest for misdemeanor possession of drug paraphernalia (G. Ex. 1 at 48-50) and (2) that he pleaded guilty to resisting arrest during that period (G. Add. St. ¶21). That might tend to cut against a finding of excessive force in <u>Graham</u> terms. But it is scarcely conclusive--such cases as <u>O'Leary v. Luongo</u>, 692 F. Supp. 893, 903-04 (N.D. Ill. 1988) illustrate how a defendant's conviction for resisting arrest does not necessarily bar an excessive force claim arising out of the arrest if the force used was objectively excessive, and Gregory's account of receiving

repeated punches to the face and being beaten with sticks would certainly appear to fit that characterization.

Further, while the absence of any visible injuries is clearly relevant to the determination whether the use of force is constitutionally excessive, it does not preordain the outcome (McNair v. Coffey, 279 F.3d 463, 469-70 (7th Cir. 2002)). As Lester v. City of Chicago, 830 F.2d 706, 712 (7th Cir. 1987) explains, such absence of injury goes to Gregory's potentially recoverable damages but not to the existence of a constitutional violation as such:

> The Fourth Amendment protects against unreasonable seizures, not seizures that "shock the conscience" or cause "severe injuries." If, under the totality of circumstances, a police officer unreasonably seizes a person by using excessive force, he has violated that person's Fourth Amendment rights. The objectively unreasonable seizure itself (regardless of the officer's motive or whether any injury inflicted was severe) crosses the constitutional threshold.

So although the issue is closer, it must be concluded that the other aspect of the physical harms sustained by Gregory--the punches and beatings--also implicate factual disputes that preclude summary judgment on the first phase of the Saucier inquiry. No resolution of those disputes, or of the disputes as to the leg sweep, are permissible at this Rule 56 stage (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). Thus both aspects of Gregory's Count Two charge of excessive force have met the first of the Saucier requirements: showing a violation of a

16

the first of the <u>Saucier</u> requirements:  showing a violation of a constitutional right.

That being so, it is hardly necessary to dwell on <u>Saucier</u>'s second test for qualified immunity:  whether the particular violation of that constitutional right in this case is clearly established, as a matter of law, as a constitutional violation (530 U.S. at 201).  Just as was true in <u>Hope</u>, 122 S.Ct. 2508, on Gregory's account of his encounter with the officers their imposition of excessive force certainly violated the objective standards of reasonableness (<u>Graham</u>, 490 U.S. at 395).  And so both facets of the required inquiry teach that qualified immunity principles do not bar Gregory's claim for excessive force against Oliver, Chastain and Guzman.

But defendant officers claim to have another string to their summary judgment bow:  D. Mem. 7 contends that <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994) bars any excessive force claim arising from the November 5, 1998 incident.  <u>Heck</u>, <u>id</u>. at 487 precludes the assertion of any Section 1983 claim if the successful prosecution of that claim "would necessarily imply the invalidity" of a prior conviction that has not been vacated or overturned.  And according to the officers, that is the consequence of Gregory's guilty plea, from his actions during the course of that November

5 encounter, to charges of resisting arrest[9] and aggravated assault.[10]

But that suggested one-to-one correlation between (1) a conviction for resisting arrest or aggravated assault and (2) the absence of a viable claim of excessive force is simply nonexistent. It is apparent that in some instances a Section 1983 claim does not contradict the events that resulted in a plaintiff's convictions--two obvious examples would be an officer's unjustified imposition of excessive force in an

---

[9]  Here is 720 ILCS 5/7-7:

> A person is not authorized to use force to resist an arrest which he knows is being made either by a police officer or by a private person summoned and directed by a police officer to make an arrest, even if he believes that the arrest is unlawful and the arrest in fact is unlawful.

[10]  Here is the relevant portion of 720 ILCS 5/12-2(a):

> A person commits an aggravated assault, when, in committing an assault, he

> *       *       *

>> (6)  Knows the individual assaulted to be a peace officer, or a person summoned and directed by him or a correctional officer, while such officer is engaged in the execution of any of his official duties.

Note that "aggravated" in that subsection does not connote any especially egregious physical conduct--it is rather based on the identity of the target of the assault.

overreaction to an arrestee's assault,[11] or the imposition of
excessive force after the event that led to a resisting-arrest
conviction (in the latter respect, see, e.g., <u>Simmons v. Sheahan</u>,
No. 94 C 549, 1995 WL 476592 at *1 (N.D. Ill. Aug. 8)).

In this instance Gregory's factual statement provides a
plausible scenario that would not invalidate the resisting arrest
and aggravated assault convictions, based on the fact that his
own actions had preceded the imposition of excessive force. And
Gregory's version of events could also allow his convictions to
coexist with his excessive force claim on the premise that the
excessive force was improperly disproportionate to Gregory's
offenses of conviction.

As for the resisting arrest conviction, it was based on a
charge "in that the defendant struggled with Officer Gabriel
Guzman while being handcuffed" (G. Ex. 13 at 3). Because Gregory
says he was handcuffed <u>before</u> the leg sweep (G. Add. St. ¶28),
the conviction for resisting arrest would not be invalidated by a
Section 1983 excessive force claim because of the lack of
contemporaneousness.

Although the beating of Gregory's face and body (G. Add. St.
¶28) occurred while Gregory was being handcuffed (G. Ex. 1 at 47-

---

[11]    Remember that an assault need not involve an actual
unlawful touching--a battery (see n.8). And that was true here,
for the charge was only that Gregory's attempted kick "plac[ed]
Gabriel Guzman <u>in reasonable apprehension</u> of receiving a
battery."

51), it does not follow that a finding of excessive force would automatically invalidate the conviction for resisting arrest. Force was likely necessary to handcuff Gregory while he was resisting arrest, but there is surely a need for a factual determination as to whether the beatings with fists and sticks was or was not necessary to effect the arrest.

As for the aggravated assault conviction, it was based on a charge that Gregory "knowingly kicked at Gabriel Guzman, thereby placing Gabriel Guzman in reasonable apprehension of receiving a battery" (G. Ex. 13 at 4). As with the other conviction, Gregory's excessive force claim would not necessarily invalidate it for the same two reasons.

In temporal terms, the conviction does not place the attempted kick at a specific time during the incident. Although Oliver's testimony has it occurring simultaneously with the injury (G. Ex. 2 at 81), the leg sweep could have occurred after the aggravated assault and would thus not at all contradict the conviction.

On the other branch of the analysis, it is obvious that the conviction of aggravated assault for an attempted kick would not necessarily preclude an excessive force claim. Both the leg sweep and the beating sustained by Gregory could constitute excessive force, not at all the reaction of a reasonable officer

at the scene, without disturbing the determination that Gregory had committed an assault.

Because it is exceedingly plain that Gregory's convictions for resisting arrest and aggravated assault would not necessarily be invalidated by his claims of excessive force, Heck does not bar those claims. And so, at last, defendants' motion for the summary dismissal of Gregory's excessive force claims is denied.

### Count Three: Abuse of Process

Gregory asks that his original claim of "malicious prosecution" be recharacterized for Section 1983 purposes as a claim of abuse of process under the Fourteenth Amendment's guaranty of procedural due process (G. Ans. Mem. 15). In that respect Gregory says that the police failed to tell the prosecutor exculpatory evidence that would have prevented his prosecution on drug charges (id.), more specifically that the prosecutor did not testify to the contradictory recollections among the three police officers as to the location of the crack cocaine found in the August 28, 1998 traffic stop (G. Add. St. ¶20). Even were that purported scenario to be credited (more on this later), it would not suffice to show a violation of a constitutional right.

It is true that withholding material exculpatory evidence from a prosecutor is a constitutional tort that threatens an individual's right to a fair trial (Newsome v. McCabe, 256 F.3d

21

747, 752 (7th Cir. 2001), citing <u>Brady v. Maryland</u>, 373 U.S. 83 (1963)). Thus a criminal defendant can assert a federal due process claim against an officer who "withheld information or evidence necessary for the fair and impartial trial guaranteed by the U.S. Constitution" (<u>Ienco</u>, 286 F.3d at 999, citing <u>Newsome</u>, 256 F.3d at 752). <u>Newsome</u>, <u>id</u>. links the police officer's duty to disclose exculpatory evidence to the prosecutors with the criminal defendant's right to a fair trial, essentially applying the obligations of prosecutors outlined in <u>Brady</u> to police officers.

Whether or not Gregory made a <u>Brady</u> request to the prosecutors, in this instance the officers' purported failure to turn over potentially exculpatory evidence would not have violated Gregory's constitutional rights because that evidence was not material in <u>Brady</u> terms--that is, there was no reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense (<u>United States v. Jackson</u>, 780 F.2d 1305, 1309-10 (7th Cir. 1986), citing <u>United States v. Bagley</u>, 473 U.S. 667 (1985)). And that is so, of course, because Gregory was acquitted even without the withheld evidence. Hence that information could not have had an adverse impact on the outcome of the trial.

But as hinted at earlier, the supposed scenario that has served as the basis for the just completed discussion--and

22

rejection--of this abuse of process claim is unsound on the
record tendered to this Court. For one thing, even though
Gregory's claim depends on the premise that the nondisclosure of
Granger's version of events operated to his detriment, the record
reflects no effort on his part to inquire whether the prosecutor
would have instituted proceedings if she had been provided with
that information. Nothing stood in the way of his making that
inquiry through the discovery process, and his failure to do so
does not reasonably entitle him to a favorable inference.

Indeed, and even more damaging, Gregory does not really show
(in the Rule 56 sense) that the officers withheld information
from the prosecutor. Gregory instead seeks to deduce a
constitutional violation from the discrepancy between the
prosecutor's description during Gregory's bench trial of the
Guzman and Chastain testimony and the different version voiced by
Granger, which was not given to Gregory's counsel or to the trial
judge. But for aught that appears, that may well have been the
result of the prosecutor's decision, rather than of the officers'
having withheld the information from the prosecutor.[12] Yet
Gregory also failed to inquire into that topic through the

---

[12] In fact, it would appear much more likely that the
prosecutor's trial preparation would have encompassed the
interviewing of all three officers--the witnesses to the
occurrence.

discovery process, and once again he is disentitled to a favorable inference now.

Relatedly, that same difficulty confronts any possible argument that Gregory was compelled to undergo a prosecution that would not have been brought if the prosecutor had known the contested location of the cocaine and the identity of the female passenger. As just discussed, any such contention suffers from the failure to support a reasonable inference of the prosecutor's lack of knowledge. But even were that not the case, Gregory has also proffered nothing to support even an inference that the assertedly undisclosed information would have caused the prosecutor not to prosecute Gregory. After all, the uncontested evidence was that police officers located a rock of crack cocaine in Gregory's car (G. St. ¶9).

Finally, even though Complaint ¶23 also attempts to lay this claim at City's doorstep, nothing is advanced that even suggests that the charged conduct reflects City's policy, custom or usage. Hence it is entitled to summary judgment on <u>Monell</u> grounds.

All of that being so, Gregory has failed to create a factual dispute that enables him to survive the summary judgment motion as to his Count Three claim. So the motion to dismiss the claim of abuse of process for withholding exculpatory evidence is granted.

## Count Four:  Abuse of Process

Count Four, after incorporating by reference the allegations
of the earlier counts, states the gravamen of Gregory's remaining
abuse of process claim in Complaint ¶¶26 and 27:

> 26.  Defendants Oliver, Chastain and Guzman, acting
> maliciously and without justification, caused the bringing
> of a suit against Plaintiff not in order to vindicate legal
> rights and obtain a judgment but in order to intimidate
> Plaintiff and for other improper purposes, and thereby
> deprived Plaintiff of rights secured by the Fourth Amendment
> to the Constitution of the United States.

> 27.  This deprivation of rights was caused by an
> official policy, custom or usage of the City of Waukegan.

Then by way of argument to flesh out that claim, Gregory accuses
City of having a pattern and practice of making pretextual
arrests to pressure otherwise unwilling arrestees into serving as
informants (G. Ans. Mem. 17).  According to Gregory, City targets
individuals for arrest not to enforce the laws, but rather to use
arrests as a bargaining chip to "persuade the arrestee to become
an informant" (id.).

But then, after having asserted without caselaw support that
an effort to enlist Gregory as an informant based on the charges
brought against him arising out of the August 28, 1998 arrest

25

violated his constitutional rights,[15] Gregory disregards the very statute of limitations issue discussed as to Count One. Gregory's claim focuses on the conduct of Oliver, Chastain and Guzman on August 28, 1998: their asserted threats to process charges against Gregory if he failed to become an informant. Because that conduct occurred more than two years before this action was filed, any claim grounded on that conduct is also barred by the statute of limitations for all Illinois-based Section 1983 claims.

What did take place during the two-year period that preceded the institution of this lawsuit, however, was the State's Attorney's decision to prosecute the charges and to proceed to trial--and of course the trial itself. And in turn, the only actions that the officers could have taken during that time frame that might implicate a constitutional violation would have been the same alleged failure to provide exculpatory information that served as the basis of Count Three.

---

[15] See the just-completed discussion as to Count Three. And remember the Supreme Court's teaching that arrests based on legitimate probable cause, such as traffic violations, do not implicate constitutional rights on grounds of pretext just because the arresting officers may have bigger fish to fry (Whren v. United States, 517 U.S.806, 812-13 (1996)). In that respect, as has been said with respect to Count Three, it must be recalled that the arresting officers did find a rock of crack cocaine in Gregory's car, at least colorably supporting a prosecution on a drug charge (though he was ultimately acquitted).

26

There is obviously no need to repeat the analysis set out in the preceding section of this opinion: This potential aspect of Count Four must share the same fate as Count Three. For the identical reasons that caused Count Three's dismissal, the only non-time-barred conduct sought to be ascribed to the officers also cannot be the basis of a viable Section 1983 claim.

## Conclusion

As stated at the outset, the presence or absence of genuine material facts as to Gregory's several claims has led to a mixed bag of results in Rule 56 terms:

1. As to Gregory's Count One claim of unreasonable seizure due to his arrest, Guzman's motion is denied, while all other defendants are entitled to a judgment as a matter of law and are dismissed.

2. As to Gregory's Count Two claim of unreasonable seizure in the form of excessive force, the officers' motion is denied in its entirety.

3 and 4. As to Gregory's Count Three and Four claims of abuse of process, all defendants are entitled to a judgment as a matter of law and are dismissed.

Because the surviving claims must go to trial, this action is set for a status hearing at 8:45 a.m. October 25, 2002 to discuss the further procedures and time table toward that end.

_____
Milton I. Shadur
Senior United States District Judge

Date: October 21, 2002